# GEORGE H. McDONALD, ADMINISTRATOR, IMPL'D, ETC.,

## v.

## EUGENE CLIFFORD.

*Replevin—Chattel Mortgage—Distress Warrant—Priority of Liens— Question of Fact.*

In an action of replevin involving the priority of liens on certain furniture based on the question whether the lien of a chattel mortgage was waived by surrender of possession, this court declines to interfere with the finding of the court below in favor of the mortgagee, there being a sharp conflict of evidence.

[Opinion filed January 19, 1888.]

IN ERROR to the Circuit Court of Kane County; the Hon. C. W. UPTON, Judge, presiding.

Mr. FRANK CROSBY, for plaintiff in error.

Messrs. BOTSFORD & WAYNE, for defendant in error.

WELCH, P. J. This was an action of replevin brought by the defendant in error against Stephen Lasher, plaintiff in error, intestate, Leonard Lasher and N. S. Carlisle, to recover certain furniture conveyed by a chattel mortgage executed by Leonard Lasher, on January 27, 1880, to the defendant in error, to secure the payment of a promissory note of said Lasher of that date for $1,700, payable two years from date, with interest at eight per cent., payable monthly. Separate pleas were filed. Stephen Lasher, plaintiff in error, intestate, filing pleas of *non cepit, non detinet*, property in himself, justification and taking by himself as distress for $1,200 rent in arrear from Leonard Lasher, mortgagor. Replication to pleas, jury waived, and trial by the court. Judgment, finding the right of property in the defendant in error, and for costs. From which judgment this writ of error is prosecuted. The

evidence shows that on or about the 2d of August, 1881, one
A. W. Schoonhoven, as Constable, had in his hands an execu-
tion for some $20 in favor of M. T. Lynch, against Leonard
Lasher; that on the 3d day of August he proceeded to execute
the writ by levying upon the mortgaged furniture. Defend-
ant in error then placed in the hands of this Schoonhoven this
chattel mortgage with directions to take possession of this
property under this mortgage; the mortgage containing an
insecurity clause, entitling the mortgagee to take possession
and sell upon ten days' notice, before the maturing of the note.
On August 3d, Stephen Lasher, plaintiff in error, intestate,
issued a distress warrant for $1,200 rent, claimed to be due
him from Leonard Lasher July 5, 1881. On the 3d day of
August an arrangement was made between E. J. Joslyn, as
attorney for Stephen Lasher, and the defendant in error, that
the distress warrant should be put into the hands of Schoon-
hoven, and that he should hold this property and become cus-
todian of it, 1st, for the mortgagee, 2d, for the execution
creditor, 3d, for the landlord. On the 6th of August there
was another arrangement or agreement made about the sur-
render of the property in controversy. This arrangement or
agreement presents the only controverted question in this
case. It was made by J. Crosby for Stephen Lasher and Leon-
ard Lasher, with the defendant in error, and what the arrange-
ment or agreement was, is to be determined from their testi-
mony. Defendant in error states that his agreement with
Crosby was "that Leonard Lasher should pay off the execu-
tion;" that he was to be permitted to run the house and pay
part of the mortgage debt weekly; that the distress warrant
should not interfere. It was agreed that Leonard Lasher
should be let alone so he could pay under the agreement, and
on that consideration I made the following written order:

"ELGIN, August 6, 1881.

" To N. W. SCHOONHOVEN, ESQ. :

" You will surrender possession of Waverly House furni-
ture, held by you as custodian, under chattel mortgage to me,
Leonard Lasher, mortgagor.

"EUGENE CLIFFORD, Mortgagee."

McDonald v. Clifford.

Crosby states that he " had a talk with Clifford about fixing matters up, based upon paying Lynch judgment and mortgage and enabling Leonard Lasher to go on with the business; no recollection of distress warrant being mentioned in this talk; made arrangement of August 6th without reference to distress warrant; was trying to get the property for Leonard Lasher to pay this indebtedness, acting as his attorney and in his interest, but made no arrangement about distress warrant."

The Lynch execution was paid, and $100 paid on the mortgage by Leonard Lasher. The order signed by Clifford was given to Crosby. Schoonhoven, the bailiff, states that " after this arrangement I saw Crosby, and something was said about turning the property over to Leonard Lasher; Crosby said it would do as well to turn it over to him, as he was Leonard's attorney; about 5 P. M. the same day Crosby said I should go back and hold it on landlord's warrant. That night I saw Clifford. On Monday he told me to hold property on mortgage; arrangement was made on Saturday, and Monday after Clifford told me to hold property under mortgage; held until August 10th under mortgage and landlord's warrant; was ordered by Clifford to move property out under mortgage when Lasher, Joslyn and crowd put me out and took possession." That he did not deliver the property to Lasher. In view of the evidence in this case was it error in the court to refuse to hold, as a proposition of law:

" That plaintiff's mortgagee, having surrendered possession of the mortgaged property after having once taken it, to the mortgagor, said property became thereupon subject to the lien of the distress warrant of the landlord, Stephen Lasher?"

The mortgage was a prior lien on this furniture. Was anything done by the defendant in error by which this lien was postponed or lost? Did the agreement made with Crosby by defendant in error operate as a surrender of this property by him to Lasher and was it a waiver of his lien thereon? The only witnesses to this agreement were Crosby and the defendant in error. The conflict between their testimony as to the agreement is not reconcilable. One or the other of them must have been mistaken in his testimony. Lennon v. Goodspeed, 89 Ill. 438.

Under such circumstances it became the duty of the Judge sitting in this case as a jury to properly weigh the evidence in connection with all the facts and circumstances surrounding the transaction, and from all the facts determine who told the truth. The Judge who heard this case had many facilities for arriving at a correct conclusion which this court does not possess. He had the witnesses before him, heard the story of each on the stand and could observe their manner of testifying. The Circuit Court has many tests for detecting falsehood and ascertaining the truth, which an appellate court can not have when the evidence is submitted on paper." The Judge who tried this case by his refusal of the proposition of law asked by plaintiff in error, holds that the defendant in error did not surrender the property or lose his prior lien. We adopt the language of Supreme Court in case *supra* in this case.

"We perceive no ground upon which we can reverse the judgment in this case without a clear departure from a long line of decisions, holding that when a question of fact only is involved and the evidence is conflicting, this court will not interfere unless the verdict is the result of prejudice or passion, which is not the case here." The authorities referred to by plaintiff in error announce sound and correct principles of law as to the rights of the creditors when the mortgagee permits the mortgagor to remain in possession after default in payment, and when the mortgagee, after taking possession, surrenders the property to the mortgagor. These authorities, we hold, have no application to the facts in this case. We are of the opinion that there was no error in refusing the proposition of law asked by plaintiff in error, and that the evidence fully sustains the finding and judgment. The judgment is affirmed.

*Judgment affirmed.*